HEARD APRIL TERM, 1879.

CASE No. 740.

THE STATE v. ALFRED McNINCH.

1. The jury commissioner who assisted in drawing the grand jury that found the bill of indictment, and the petit jury that convicted the prisoner, was the husband of a fourth cousin of deceased. *Held*, no ground for quashing the indictment, or granting a new trial.

2. That the Circuit solicitor went into the room of the grand jury after they had agreed, and at the request of the foreman, to instruct him how to write the finding, is no ground for quashing an indictment. Distinction drawn between this case and *State* v. *Addison*, 2 *S. C.* 356.

3. It is the right and duty of the solicitor on many occasions to inform and instruct the grand jury as to the manner in which the business in their hands is to be conducted. *Semble.*

4. The established practice of permitting the state in a case of felony to order jurors to stand aside without challenge or cause shown, until the panel has been exhausted—approved.

5. Whether a witness is drunk or not, and whether his evidence, relating to the question in issue, is material or not, are questions of fact for the jury.

6. In a capital case this court will take notice of errors apparent upon the record affecting the substantial rights of the prisoner on his trial, although not made a ground of appeal.

7. A prisoner has the right to cross-examine a witness for the prosecution before he leaves the witness-stand; and a refusal of such right is proper ground for a new trial.

Before ALDRICH, J., at Laurens, February, 1879.

The prisoner was indicted for the murder of William C. Kilgore, on December 2d, 1878.

Besides the facts stated in the opinion of the court, it appears that while the jury was being empaneled, the solicitor ordered jurors to stand aside, without challenge or cause shown; but that the panel being exhausted these same jurors were recalled and presented to the prisoner.

J. S. Grimes, a witness sworn for the prosecution, gave testimony concerning the circumstances of the difficulty which ended in the death of the deceased. In his charge to the jury the judge said: " I do not give the evidence of this witness [*i. e.*, Grimes,]

because he was withdrawn and not cross-examined; I suspected he was drunk, but as the attention of the court was not called thereto, I exercised a liberal charity and let him go. He said nothing material." His Honor made the following report afterwards upon this matter, the Mr. Garlington referred to being counsel assisting the solicitor in the prosecution :

"The witness, Grimes, was presented by the state, and was examined by Mr. Garlington. His answers to the first questions attracted my attention. I suspected he was intoxicated. A few more answers convinced me he was drunk. The examination proceeded until, I think, the counsel, the jury, and the bar came to the same conclusion, when Mr. Garlington proposed to withdraw him, in which I acquiesced. The defence claimed the right to cross-examine, which was admitted by the solicitor. The presiding judge said : 'Of course you have the right to cross-examine, but I do not see the use of continuing the examination in his present condition ; he may be recalled, either to resume his examination in chief or to cross-examine, as may be desired by the prosecution or the defence.' The witness was withdrawn, after some consultation between the counsel for the defence, and was not recalled by either side. No exception was taken, and the right to cross-examine not denied.

"After he was withdrawn I lost sight of him ; had never seen him before and supposed he was very drunk, until to-day, when I was informed it was his natural manner. This may be so, but I do not think I could be mistaken. In my opinion the man was drunk."

At the conclusion of his charge to the jury, the judge was requested by the prisoner to charge the jury in the words set out in the third and fourth grounds for a new trial in this court. Upon these two requests his Honor reports: "I was requested to give certain instructions to the jury, as contained in first request, which being, in my opinion, covered by the charge, were refused. I did charge as requested in the second request, but added that it was the duty of the jury to inquire who was the first wrong-doer."

The prisoner was convicted.

The case was brought to this court by the defendant upon the following notice and grounds:

The defendant, Alfred McNinch, notifies of an appeal, and that he will move in the Supreme Court, at the next regular term thereof, to reverse the ruling of his Honor Hon. A. P. Aldrich, in his refusal to quash the indictment herein:

## I.

1. Because Stobo D. Garlington, the jury commissioner, who assisted in drawing the grand jury who found the bill of indictment, was the husband of a cousin of the deceased, William C. Kilgore.

2. Because the solicitor, B. W. Ball, Esq., had, under the direction of the court, free access to the grand jury, and did visit the same, before and during the day they had under consideration the bill of indictment in this case.

## II.

1. And the said defendant will at the same time move to set aside the verdict in this case, and the judgment of the court thereon, on the further ground that his Honor the presiding judge erred in allowing the solicitor, when the petit jury was empaneled, to cause jurors then presented to the prisoner to stand aside, without challenge and without cause shown.

2. Because his Honor the presiding judge erred in withdrawing from the consideration of the petit jury charged with the trial of this action, the testimony of one J. S. Grimes, a witness on the part of the prosecution, after he had testified.

3. Because his Honor the presiding judge, although requested so to charge, refused to charge the jury that all the circumstances of the homicide having been disclosed by evidence for the prosecution, the homicide does not imply malice, but malice can be established only by the circumstances themselves.

4. Because his Honor, when charging by request, that "it is for the jury to inquire if the deceased struck the first blow with his pistol upon the prisoner, and if the prisoner should reasonably fear for his life, or fear great bodily harm, then, as a matter of law, the prisoner might be found not guilty," erred in adding

that it was also the duty of the jury to inquire who was first in the wrong.

5. Because the said jury commissioner, being connected by marriage with the said deceased, assisted in drawing the petit jury who tried this cause.

6. Because the Circuit judge erred in charging the jury that in the testimony of J. S. Grimes, he said nothing material.

*Messrs. Pope, Baxter & Caldwell,* for appellants.

Upon the first ground taken for quashing the indictment, reference was made to 5 *S. C.* 429 ; and upon the second ground, to 2 *S. C.* 356. The challenge to the array of the petit jury and the motion to set aside the *venire* because drawn by a relative of the deceased after his death, should have been sustained. 5 *S. C.* 429. The state having now the right to challenge two jurors peremptorily, cannot require any to stand aside. Before the act of 33 Edward I., the right of peremptory challenges by the king was unlimited. 1 *Chit. on Crim. Law* 534. That act took away from the king the right of peremptory challenge, and it became the practice to allow the king to require the jurors to stand aside. That act was made of force in South Carolina in 1731, but was repealed by implication in 1871, (14 *Stat.* 694,) and expressly in 1872, (*Gen. Stat.* 782.) So now the state has only two peremptory challenges.

The witness, Grimes, was withdrawn before cross-examination, without the consent of the prisoner, who insisted upon his right to cross-examine. In charging the jury that this witness said nothing material, his Honor disregarded the requirement of Section 26, Article IV., of our state constitution. Its materiality was a question of fact, and the judge's misapprehension of that testimony invalidates the judgment. 1 *Mill Con. R.* 200, 216 ; 1 *Bail.* 482 ; 2 *Bail.* 128 ; 5 *S. C.* 65, 67. Upon the third ground for a new trial, counsel cited 6 *S. C.* 185 ; 42 *N. Y.* 1 ; 53 *N. Y.* 164 ; 1 *Archb. Crim. Pr. and Pl., Pomeroy's Notes,* 152. Upon the fourth ground, they contended that the words added were indefinite and might mislead. It may have carried their minds to offensive words, rather than to illegal acts. 6 *S. C.* 185.

*Mr. Solicitor Ball*, for the state. .

As to the relationship of the jury commissioner, see 1 *Burr. Law Dict.* 69, *title "Affinity."* There is no nearness in this case. A challenge to the array may be based on partiality of the officer. 1 *Co. Lit.* 156, 1*st Am. ed.* The early decisions have reference to the sheriff or other officer who returned the *venire.* 3 *Whart. on Crim. Law.*, § 3016. But here the state is a party and not the deceased. Under our statute, there are three officers. The motion to quash is not proper—there should have been a challenge to the array, and that could be only in writing. 3 *Whart. on Crim. Law*, § 2947. If defendant is correct, the trial might be perpetually blocked. As to the solicitor going into the grand jury room, we have no statute in our state. Mr. Chitty says it is permitted in England. See 1 *Whart. on Crim. Law* 495, 496. This case in every aspect is very different from Addison's case. 2 *S. C.* 356.

The right of the state to require jurors to stand aside temporarily, is well settled. *Gen. Stat.* 747; 2 *N. & McC.* 553; 7 *Rich.* 416; 3 *Whart. on Crim. Law*, § 2956. The present statute does not affect this right, because it gives to the state two peremptory challenges; standing aside for cause, as authorized in 33 Edward I., does not mean the same thing.

As to the witness, Grimes. He testified in the hearing of the jury, and it was no error in the judge not to read over his testimony to them. There was nothing that he said that was favorable to the prisoner, and therefore he is not prejudiced.

The judge properly refused the first request to charge, as he had already fully covered the whole ground of the case. It is not error in such cases for the judge to refuse to charge an abstract proposition of law, selected from some decided case, as in this case from 6 *S. C.* 185. 1 *Archb. Cr. Pr. and Pl.* 171, 641, 1643; .5 *Wend.* 289. The second request to charge is the demoralizing principle announced in Selfridge's case; but his Honor's qualification states the correct doctrine, and just as he had already charged, and the jury could not have been misled by the charge. Notes to 1 *Arch. Cr. Pr. and Pl.* 643, citing 3 *Strob.* 155.

As to the principles upon which new trials are granted, see

4 *Whart. on Crim. Law* 3226, 3248, 3253; 2 *N. & McC.* 261; 2 *Bail.* 37, 69, 665; 14 *Geo.* 55; 3 *Wat. New Trials* 302, 862; 3 *Brev.* 522.

May 31st, 1879. The opinion of the court was delivered by

HASKELL, A. J. The motion to quash the indictment in this case was upon two grounds:

1. Because the jury commissioner who aided in drawing members of the grand jury "was the husband of a cousin of the deccased."

2. Because the solicitor "had, under the direction of the court, free access to the grand jury, and did visit the same before and during the day they had under consideration the bill of indictment in this case."

The appeal is from the refusal of the Circuit judge to grant the motion. As to the first ground, the testimony is that the wife of the jury commissioner is a cousin of the deceased in the fourth or fifth degree, and there is no evidence of affinity other than that incident to such connection. There is no consanguinity between the jury commissioner and the deceased, and the degree of affinity shown is remote—too remote to be of itself evidence of bias or prejudice against the person charged. The case of *State* v. *McQuaig*, 5 *S. C.* 429, was decided upon the ground that the jury commissioner was a near blood relation—first cousin of the deceased. It is unnecessary, perhaps impossible, to draw an absolute line to mark what degree of relationship or affinity must control in such cases; but it is sufficient here to say that in the present case there is no relationship by blood, and no evidence of such affinity as, of itself, would reasonably lead to the presumption that the jury commissioner would thereby be affected in such manner as to impair the proper discharge of his duties.

As to the second ground, the evidence is that the solicitor did go to the grand jury room, "at the request of the foreman, * * * and instructed him how to write the findings, but that he had not been in the room while the case of the prisoner was under consideration." The evidence is conclusive on the point in question; but this court does not hesitate to say that the solicitor has

on many occasions the right and the duty to communicate with the grand jury as to the manner in which the business in their hands is to be conducted. It is the established practice for the Circuit judge to instruct the grand jury to apply to himself, or to the solicitor, for such further instruction or information as they may deem necessary. The solicitor is a sworn officer of the state, and responsible for the proper discharge of the duties of his office; he is presumed to have the power to discriminate between matters on which he should or should not communicate with the grand jury, and error must be shown and not presumed. The case of *State* v. *Addison,* 2 *S. C.* 356, is entirely different, and not applicable to the point now under consideration. In that case it was not a solicitor whose conduct was in question, but an attorney who was conducting the prosecution, and who was, further, a paid attorney, retained to aid in the prosecution. The facts were entirely different, for, in that case, the attorney actually interfered with the grand jury in their consideration of the bill, and argued the case in the grand jury room. Here there were no such circumstances; but this much is said to indicate that there is a broad distinction between the solicitor—an officer of the state—and one who acts merely as an attorney-at-law to aid in the prosecution. The ruling of the Circuit judge must be sustained.

The first ground for new trial is that the judge erred in allowing the state, when the petit jury was being empaneled, to cause jurors to "stand aside" without challenge, and without cause shown. The practice pursued in this respect by the Circuit judge has been long since established, and no law or sufficient reason has been advanced to show why it should be changed. *State* v. *Barrontine,* 1 *N. & McC.* 553; *State* v. *Wise & Johnston,* 7 *Rich.* 412. The order to stand aside for a time is distinct from a challenge, and is not affected by the act of 1871 (14 *Stat.* 690), which confers upon the state the additional right of peremptory challenge to a limited extent. The ruling of the Circuit court as to this point is sustained.

The second ground is that the judge erred "in withdrawing from the consideration of the petit jury, charged with the trial, * * * the testimony of J. S. Grimes, a witness on the part

of the prosecution, after he had testified." It appears, by the judge's report of the case, that the witness was allowed to be withdrawn at the instance of counsel employed to assist in the prosecution, and that the accused, although he insisted on his right, was not allowed to cross-examine the witness prior to his being withdrawn, although the judge does say that he would have been allowed to call the witness back at some other time to be cross-examined. It is difficult to see how this would have helped the accused, for the witness was practically set down on the ground that he was drunk. Whether or not he was drunk was a question on which no one but the jury was, to reach a conclusion so as to affect the case; but, even if the judge had the power to decide that the witness was drunk, he could not either take away from the jury the testimony already given, nor could he deprive the accused of the right to immediately cross-examine. Suppose this witness had been the last, (perhaps it was so,) when could the prisoner have called him back? He could have been deprived absolutely, as he was substantially in this case, of one of the most inestimable rights which belong to those who are tried for crime. The fact that the appellant was deprived of his right to cross-examine the witness before his removal and withdrawal is not contained in the grounds of appeal, but is in the report of the judge. It is urged that the appellant had thus waived his right to appeal from such action of the court below. The same rule does not apply in this respect to civil actions and to trials involving human life. This court is bound, in a capital case, to take notice, in behalf of the accused, of any error apparent upon the record by which the prisoner has been deprived of any of the substantial means of enjoying a fair and impartial trial. As already indicated, it was not the province of the judge to decide that the witness was drunk, nor was it proper to decide that the evidence was immaterial and must be withdrawn. The evidence related to the question in issue, and could not, in a proper sense, be called immaterial; while its materiality, as measured by its weight or value, was a question solely for the jury. Either of the reasons would give sufficient ground for new trial. But the right to cross-examine is one which must remain inviolate. To take it away would render almost value-

less the constitutional right " to meet the witnesses against him face to face." *Const., Art. I., Sec.* 11. It is the law of evidence that " when a witness has been examined in chief, the other party has a *right* to cross-examine him." 1 *Greenl.,* § 445. " The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth." *Ib.,* § 446. The right loses its efficacy if its exercise is to be postponed until the witness has had time to reflect or to be subjected to evil influences. It is unnecessary, perhaps, to say more on this point. The law is too plain to require authority. The prisoner was practically deprived, though, doubtless, unintentionally so, of the right to cross-examine the witness produced against him—one of the most inestimable rights by which a man may maintain his defence. It is concluded, therefore, that there is material error in the action of the court with regard to the witness, Grimes : the rulings upon the character of his testimony ; its withdrawal from the jury, and the practical deprivation of the right to cross-examine then and there.

The third and fourth grounds show no error, and do not require particular consideration. The fifth ground has been already disposed of.

The judgment of the Circuit Court is therefore set aside, and a new trial granted.

Motion granted.

WILLARD, C. J., and McIVER, A. J., concurred.