656 S.E.2d 352

Katherine DANGERFIELD, Respondent,

v.

STATE of South Carolina, Petitioner.

No. 26412.

Supreme Court of South Carolina.

Submitted Oct. 18, 2007.

Decided Jan. 14, 2008.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia, for Petitioner.

Deputy Chief Appellate Defender Wanda H. Carter, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondent.

Chief Justice TOAL.

In this case, the post-conviction relief (PCR) court granted partial relief to Katherine Dangerfield ("Respondent") finding that a magistrates court's imposition of a suspended sentence without a hearing did not afford Respondent due process of law. This Court granted certiorari to review the PCR court's grant of relief, and we affirm.

### FACTUAL/PROCEDURAL BACKGROUND

In July 2001, Respondent pled guilty to passing 110 fraudulent checks. Pursuant to a plea agreement between Respondent and the State, a magistrate sentenced Respondent to thirty days imprisonment to be served consecutively (a total of nine years) on each fraudulent check, but suspended the sentence conditioned upon the payment of restitution plus court costs. Respondent did not appeal her conviction and proceeded to begin making restitution payments.

The record reveals that Respondent ceased making restitution payments after November 2001. Thereafter, in February

2002, the magistrates court sent Respondent's trial counsel a copy of the order reflecting the terms of the plea agreement along with a memorandum advising counsel to contact the court or the attorney for the State "if you have any questions before bench warrants are issued." Counsel had not been in contact with Respondent since her trial the previous July, and counsel's apparent attempts to contact Respondent regarding this matter were unsuccessful. In May 2003, the magistrate had bench warrants served on Respondent. Following Respondent's arrest, the magistrate imposed the suspended sentence without a hearing.

Respondent filed a PCR application alleging ineffective assistance of counsel for negotiating an unreasonable plea deal, failing to notify Respondent of the bench warrants, and failing to request a hearing. Respondent requested relief in the form of a revised payment plan reflecting credit for time served and credit for the checks on which she had already made restitution payments. The PCR court found that counsel's conduct in negotiating a plea deal was not objectively unreasonable; however, the court found that counsel's failure to notify Respondent of the bench warrants and to request a hearing amounted to ineffective assistance of counsel because it deprived Respondent of her due process rights. The PCR court did not vacate Respondent's guilty plea, but ruled that Respondent was entitled to a hearing to determine whether she willfully stopped making restitution payments.

This Court granted certiorari to review the PCR court's decision, and the State raises the following issue for review:

Does the imposition of a suspended sentence without a hearing violate a defendant's due process rights?

### STANDARD OF REVIEW

■ This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law. *Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007).

LAW/ANALYSIS

■ The State argues that the PCR court erred in finding that the magistrate's imposition of a suspended sentence without a hearing violated Respondent's due process rights. We disagree.

■ Due process considerations apply in contested cases or hearings which affect an individual's property or liberty interests as contemplated by the federal and state constitutions. *See* U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. The procedural component of the state and federal due process clauses requires the individual whose property or liberty interests are affected to have received adequate notice of the proceeding, the opportunity to be heard in person, the opportunity to introduce evidence, the right to confront and cross-examine adverse witnesses, and the right to meaningful judicial review. *See State v. Hill,* 368 S.C. 649, 656, 630 S.E.2d 274, 278 (2006).

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court confronted procedural due process considerations as they pertained to the revocation of an inmate's grant of parole. Noting that parole does not arise until after the imposition of a sentence, the Court found that "[r]evocation [of parole] deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480, 92 S.Ct. 2593. The Court held that minimum due process requirements afford a parolee the right to "an informal hearing structured to assure the finding of a parole violation will be based on verified facts and that the exercise of [the court's] discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484, 92 S.Ct. 2593. Relying almost exclusively on the "conditional liberty" interest described in *Morrissey,* the Supreme Court soon thereafter held that due process also requires that a probationer be given a hearing before his probation is revoked for a probation violation. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The State argues that the PCR court improperly analogized the imposition of a suspended sentence to the revocation of

probation in the *Morrissey/Gagnon* line of cases because a magistrate may not place a person on probation. *See* S.C.Code Ann. § 22–3–800 (2007) ("Nothing in this section may be construed to give a magistrate the right to place a person on probation."). The State further contends that because the statutory provisions governing Respondent's check fraud do not expressly contain a notice and hearing requirement upon a defendant's alleged failure to pay restitution, *see* S.C.Code Ann. § 22–3–800 *and* S.C.Code Ann. § 34–11–90(c) (Supp.2006), Respondent is not entitled to notice and a hearing before a magistrate imposes a suspended sentence. Though perhaps correct as a matter of statute, the State's arguments completely bypass the constitutional issues driving the federal courts' due process jurisprudence.

This Court has interpreted § 22–3–800 to prohibit a magistrates court from enforcing substantive conditions as part of a suspended sentence where enforcement of the conditions has the effect of placing the defendant on probation. *See Talley v. State,* 371 S.C. 535, 545, 640 S.E.2d 878, 883 (2007) (vacating a magistrate's immediate suspension of the defendant's sentence on the condition of six months' good behavior because the condition in effect placed the defendant on probation). In our view, the PCR court's finding that the imposition of a suspended sentence has the same *constitutional* effect as the revocation of probation is clearly distinguishable from this Court's finding that a magistrate's conditional sentence has the same *substantive* effect as the placement of a defendant on probation. *See also Gagnon,* 411 U.S. at 782 n. 3, 93 S.Ct. 1756 ("Despite the undoubted minor differences between probation and parole, the ... revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole."). Therefore, we find that regardless of the statutory limitations on a magistrate's authority in probation matters, the PCR court did not err in drawing an analogy to the due process implications inherent in probation revocation.

Furthermore, we find that the PCR court correctly determined that the imposition of a suspended sentence in this case is constitutionally equivalent to the revocation of parole or probation. The imposition of a suspended sentence, like probation and parole revocation, arises after the court has sen-

tenced a defendant in a criminal prosecution. Therefore, although the imposition of the sentence does not deprive Respondent of the absolute liberty guaranteed a free citizen, the imposition of the sentence does, in fact, deprive Respondent of the conditional liberty dependent on her compliance with the restitution payment plan in her plea agreement.

Like that of parolees and probationers, the extent of Respondent's conditional liberty interest encompasses many of the core values of absolute liberty. Respondent may spend unlimited time with family and friends, take on gainful employment, and participate in other hobbies and activities available to unincarcerated members of society. Although the State's governance of Respondent's financial affairs in accordance with the strict terms of the restitution plan is not a component of the absolute liberty afforded citizens who have never been convicted of a crime, the condition that Respondent pay restitution is a far cry from serving nine years in prison. See Morrissey, 408 U.S. at 482, 92 S.Ct. 2593 (discussing the liberty interest of a parolee). Accordingly, we hold that the PCR court properly determined that the imposition of a suspended sentence implicated Respondent's due process rights.

In recognizing that parole and probation revocation proceedings must comply with minimum due process requirements, this Court has held that probation may not be revoked solely for failure to make required payments of fines or restitution. Nichols v. State, 308 S.C. 334, 337, 417 S.E.2d 860, 862 (1992). Specifically, in cases involving the failure to pay fines or restitution, we have held that due process requires the court to first make a determination on the record that the probationer willfully violated these terms of probation. Id. Because we find no constitutional distinction between the payment of restitution as a condition of suspended sentencing and the payment of restitution as a condition of probation, the PCR court correctly determined that an issue to be explored during Respondent's hearing is whether Respondent's failure to continue paying restitution was a willful violation of her conditional sentence.

Accordingly, we hold that the PCR court properly concluded that due process requires that Respondent be afforded notice

and a hearing on the willfulness of her alleged failure to pay restitution before the imposition of a suspended sentence.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the PCR court.

MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.