662 S.E.2d 493

The STATE, Respondent,

v.

Hercules E. MITCHELL, Appellant.

No. 4395.

Court of Appeals of South Carolina.

Heard April 8, 2008.

Decided May 22, 2008.

Rehearing Denied June 26, 2008.

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia; and Solicitor David Michael Pascoe, Jr., of Orangeburg, for Respondent.

THOMAS, J.

Hercules E. Mitchell appeals his convictions for murder, attempted armed robbery, and possession of a firearm during the commission of a violent crime, arguing the trial judge made several erroneous evidentiary rulings. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The victim, David Martin, lived close to his father, Nathaniel Martin, in a mobile home and ran Nathaniel's farm for a living. There was evidence that David sold marijuana and cocaine out of his mobile home.

On March 2, 2003, around 11:00 p.m., Thomas Anthony, a family friend who was staying with David at the time, knocked on Nathaniel's window and told him David had been shot.

Nathaniel and his wife went to David's mobile home, where they found him lying on the floor. Unable to elicit any response from David, they called 911.

According to Nathaniel, Anthony, who was deceased when the matter came to trial, informed him three persons were involved in the incident. Two of the participants were males wearing masks, neither of whom Anthony could identify. Anthony did, however, identify the third participant as Bridgett Darby. Darby used to rent the mobile home where David was residing at the time of his death.

Officers then located and arrested Darby. On March 3, 2003, at 1:33 p.m., Darby gave a written statement implicating herself and naming Kelvin Johnson and Terrance James.[1] In the statement, Darby said the three "talked about getting together to do to David Martin's house to rob him." Darby further stated the three only intended to take marijuana from David and then flee the scene without injuring him. She further maintained the shooting was an accident and she learned about it only after the three later met at her home. In addition to giving the written statement, Darby also told police that both Kelvin Johnson and Terrance James were from Columbia.

Darby then accompanied police officers to Columbia to help them find Kelvin Johnson and Terrance James. Officers consulted Richland County authorities, but were still unable to locate either individual. They then confronted Darby about the accuracy of her information. At 8:00 p.m. the same day, Darby gave a second statement, this time naming Mitchell instead of Terrance James as the third accomplice.

Police apprehended seventeen-year-old Kelvin Johnson during the early morning hours of March 4, 2003. About eight or nine hours later, Johnson gave a written statement in which he admitted he had panicked and shot David when he saw David reach for a gun. In the statement, Johnson also implicated Mitchell, specifically noting (1) Mitchell had helped in supplying the guns that they used to rob David; (2) following the incident, he, Darby, and Mitchell checked into

---

1. Although Darby's statement refers to her co-participants as "Kelvin and Terrance James," there appears to be no dispute that she was referring to Kelvin Johnson.

the Southern Lodge; and (3) the three divided the money they had seized from David during the robbery. Two days later, Mitchell voluntarily submitted to police custody.

In October 2004, the Orangeburg County Grand Jury indicted Mitchell for the offenses of murder, attempted armed robbery, and possession of a weapon during the commission of a violent crime. A jury trial in the matter commenced December 13, 2005.

At trial, Darby testified for the State, giving information consistent with her second statement and acknowledging she was serving sentences for accessory after the fact and armed robbery because of her participation in the incident. She testified she and Mitchell worked together, were romantically involved, and had discussed robbing David Martin before the incident took place. Darby also admitted a rifle used in the incident belonged to her uncle; however, she also stated she did not know how a pistol believed to be the murder weapon was acquired.

The State then called Johnson to the stand. Johnson had previously pled guilty to and was sentenced for murder, armed robbery, and possession of a weapon during the commission of a violent crime. Outside the presence of the jury, Johnson complained to the trial judge that the solicitor's office had "forced" him to appear at Mitchell's trial and threatened him with additional time in prison if he did not "come up here and make this man be guilty." In response, the trial judge advised Johnson that (1) both the State and the defense had the right to subpoena witnesses and any witnesses who refused to answer questions while on the stand could be held in contempt of court and sentenced to six months; (2) untruthful answers could result in perjury charges, for which the sentence could be five years; and (3) when Johnson pled guilty to the charges for which he was sentenced, he gave a statement under oath adopting the statement that he had previously given to the police about the incident.

When the jury returned to the courtroom, Johnson, after some prodding, affirmed to tell the truth. When the solicitor began to question him, Johnson was uncooperative, giving unresponsive answers and again accusing the State of forcing him to appear in court. When Johnson persisted in refusing

to answer the solicitor's questions, even after the trial judge warned him of the consequences, the trial judge sentenced him for contempt and ordered officers to remove him from the courtroom.

The State moved to introduce Johnson's statement through its next witness, Captain Rene Williams of the Orangeburg County Sheriff's Office. During an in camera hearing, the trial judge, over objections from the defense, found Johnson had given his statement freely and voluntarily. When the State asserted the statement was admissible as a prior inconsistent statement as a result of Johnson's denying it on the stand, defense counsel argued the prejudicial effect would outweigh the probative value of the statement and cross-examination was not possible because Johnson had already been removed from the proceedings. Counsel further asserted: "They're asking us to admit a blanket statement that says that there's some culpability of my client, and I have no opportunity to test the credibility other than to ask the officers who assisted in getting the statement."

The solicitor then asserted Johnson's statement was admissible under Rules 804(a)(2) and (b)(3) of the South Carolina Rules of Evidence, which permit the admission of a statement against interest as an exception to the hearsay rule when a witness persists in refusing to testify despite a court order to do so. In response, defense counsel stated he stayed with his objection. The trial judge accepted the State's argument and allowed the solicitor to publish Johnson's statement through Captain Williams.

After Williams testified, the State called Kenny Kinsey, who at the time of the incident was a sergeant in the Central Investigative Division of the Orangeburg County Sheriff's Office. Kinsey testified he interviewed Darby after she was arrested. He also noted that although Darby initially implicated Johnson and Terrance James as well as herself, she later revealed that Johnson and Mitchell were her accomplices.

On cross-examination, Kinsey claimed Terrance James "was a fictitious name" that Darby had given authorities to protect Mitchell. Defense counsel then attempted to refer to an Orangeburg telephone directory, prompting the solicitor to

request an in camera hearing. During this hearing, Kinsey explained on cross-examination that after previous attempts to locate Terrance Johnson in Richland County proved futile and both Darby and Johnson named Mitchell as the third participant, he did not check Orangeburg County sources, including the local telephone book, to determine if anyone by the name of Terrance James could be found in the area. Upon further cross-examination, Kinsey acknowledged there was a directory listing for a "Terrance A. James" in Springfield, a town in Orangeburg close to the crime scene, as well as various listings for "Terry James" and "T.A. James" in Lexington and Richland Counties.

The solicitor argued against allowing the jury to hear evidence about the telephone book listings, contending this was impermissible evidence of third-party guilt that would only confuse the jury. The trial judge agreed and did not allow the defense to introduce either the telephone books or "any evidence that there's somebody somewhere named Terrance James." The trial judge, however, did allow defense counsel to question Kinsey about what he did and did not do during the course of his investigation.

On December 15, 2005, the jury convicted Mitchell of all three offenses, and the trial judge sentenced him accordingly. This appeal followed.

## LAW/ANALYSIS

### I. Admission of Kelvin Johnson's Statement

Mitchell first contends the trial judge committed error in admitting the statement Johnson made to law enforcement while in police custody. We agree.

The Confrontation Clause of the Sixth Amendment of the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In South Carolina, not only is this right applicable to state prosecutions under the Fourteenth Amendment, it is specifically mandated by the State Constitution. *State v. Green*, 269 S.C. 657, 661, 239 S.E.2d 485, 487 (1977) (citing S.C. Const. art. I, § 14).

In 1987, the South Carolina Supreme Court noted the Confrontation Clause did not prevent the use of hearsay evidence in criminal trials "where the evidence bears significant 'indicia of reliability.'" *State v. Cooper,* 291 S.C. 351, 355, 353 S.E.2d 451, 454 (1987) (quoting *Lee v. Illinois,* 476 U.S. 530, 539, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). Two years later, however, in *State v. Pfirman,* the court appeared to take a decidedly more restrictive view toward allowing hearsay evidence against a criminal defendant. Under *Pfirman,* although a prior inconsistent statement implicating an accused may be admitted as substantive evidence when the declarant testifies at trial and is subject to cross-examination, "[w]hen . . . the declarant refuses to admit the statement imputed to him, the accused is denied effective cross-examination in violation of his confrontation rights." *State v. Pfirman,* 300 S.C. 84, 86, 386 S.E.2d 461, 462 (1989).

In 2004, the United States Supreme Court, in *Crawford v. Washington,* reversed an assault and battery conviction, holding the trial court should have suppressed a statement to law enforcement given in conjunction with the investigation because state privilege law prevented the prosecution from calling the declarant to testify against the defendant. Although the statement was admissible as a hearsay exception under the applicable rules of evidence, the court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

We see no reason why the rule in *Crawford* and similar South Carolina cases should not apply to the present dispute. Although the trial judge ultimately ruled Johnson's statement admissible as a statement against interest from an unavailable declarant rather than as a prior inconsistent statement, Mitchell had no opportunity to cross-examine Johnson about the statement because Johnson had already been removed from the courtroom when the State moved to admit it.

The State argues Mitchell did not preserve this issue for appeal because his trial attorney never explicitly raised the issue of due process. The State further contends Mitchell did

not adequately present a *Crawford* objection in his brief to this Court. We reject these arguments.

■ There is persuasive authority for the State's position that an assignment of error under *Crawford* requires more than a standard hearsay objection. *See Mencos v. State*, 909 So.2d 349, 351 (Fla.Dist.Ct.App.2005) ("An objection specifically based on *Crawford* serves to focus the trial court's attention on the salient inquiry required by that decision, i.e., whether the evidence is 'testimonial,' whether the witness is 'unavailable,' and whether there was a 'prior opportunity for cross-examination.' ") (quoting *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354). Nevertheless, even though Mitchell's attorneys did not cite *Crawford* during trial or explain on appeal why this decision is applicable, we hold Mitchell presented a sufficient basis for an assertion of reversible error.

At trial, defense counsel argued the statement at issue was "a blanket statement that there's some culpability of my client" and he had "no opportunity to test [Johnson's] credibility." Even without a citation to *Crawford*, these assertions were sufficient to direct the trial judge's attention to the problems attendant to admission of an incriminating statement when the declarant is unavailable for cross-examination by the accused. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 302–03, 641 S.E.2d 903, 907 (2007) (holding an objection, though not phrased "in the exact terms used in the issues on appeal" "provided a meaningful objection with sufficient specificity to allow the trial court to rule on the issue").

In the recent case of *State v. Ladner*, the South Carolina Supreme Court noted that although "[t]he *Crawford* Court declined to comprehensively define 'testimonial,' " it included within a " 'core class of "testimonial" statements' " (1) "custodial examinations" and (2) "statements that were made under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial." *State v. Ladner*, 373 S.C. 103, 112, 644 S.E.2d 684, 688–89 (2007) (quoting *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354). Here, defense counsel argued Johnson's statement inculpated his client, the only reasonable inference being

that an objective witness would expect the statement could be used at a later trial.

We further hold the objections presented at trial concerning the defense's inability to cross-examine Johnson, together with the arguments Mitchell presented on appeal, sufficiently preserved for our review the issue of whether he was denied his Sixth Amendment right of confrontation. *See State v.McNinch*, 12 S.C. 89, 96–97 (1879) ("But the right to cross-examine is one which must remain inviolate. To take it away would render almost valueless the constitutional right 'to meet the witnesses against him face to face.'") (citing S.C. Const. art. 1, § 11 [now section 14]), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 328 n. 5 (1991). The State suggested during oral argument that the arguments by the defense against admission of Johnson's statement were presented in a context that would have more readily suggested an assertion of prejudice than one of the loss of the right to confront a witness. We hold, however, defense counsel's complaint about his inability to cross-examine Johnson were sufficient to preserve for our review the issue of his client's right to confront witnesses. Counsel's contention that he had "no opportunity to test the credibility other than to ask the officers who assisted in getting the statement" went directly to the heart of confrontation, namely, the requirement that "a witness ... testify under oath and submit to cross-examination so that the jury can observe the witness's demeanor and assess his credibility." *State v. Gillian*, 360 S.C. 433, 449, 602 S.E.2d 62, 71 (2004).[2]

Finally, we disagree with the State's argument that we should uphold the admission of Johnson's statement because Mitchell's brief to this Court focused on a general denial of due process rather than on the specific complaints expressed during the trial about his Sixth Amendment right of confrontation under *Crawford*. Although defense counsel never expressly mentioned due process at trial, his assertions about the right to confront adverse witnesses regarding incriminating statements raised due process concerns. *See Dangerfield*

---

2. The supreme court affirmed this Court's decision in *Gillian*, but modified it on grounds not related to the issues relevant to this appeal. *State v. Gillian*, 373 S.C. 601, 646 S.E.2d 872 (2007).

*v. State*, 376 S.C. 176, 179, 656 S.E.2d 352, 354 (2008) (including "the right to confront and cross-examine adverse witnesses" as one of the requirements of "[t]he procedural component of the state and federal due process clauses").

The State further argues there was no denial of fundamental fairness because Johnson took the stand and gave evidence favorable to Mitchell. We disagree. As noted in *Crawford*, "[w]here testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. In the present case, although Johnson took the stand, he refused to answer the solicitor's questions, was found in contempt, and was removed from the courtroom while still on direct examination and before his statement was introduced. We are simply at a loss to understand how Mitchell ever had the opportunity to cross-examine Johnson about his statement. *See Douglas v. Alabama*, 380 U.S. 415, 416–19, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (holding a defendant's Sixth Amendment rights were improperly denied by allowing the prosecutor to read, "under the guise of cross-examination to refresh [the witness's] recollection" a statement from a witness who persisted in relying on self-incrimination grounds to avoid answering questions even after the trial court advised the witness that such a privilege was not available); *Simpkins v. State*, 303 S.C. 364, 368, 401 S.E.2d 142, 143–44 (1991) (holding that admission of hearsay testimony from a child victim's guardian ad litem unfairly denied the defendant the right of cross examination even though the victim had testified in court); *cf. State v. Blue*, 717 N.W.2d 558, 566 (N.D.2006) ("A witness's mere appearance at a preliminary hearing is not an adequate opportunity for cross-examination for purposes under the Confrontation Clause."). Moreover, the trial.judge's decision to admit the statement under Rule 804 of the South Carolina Rules of Evidence suggests at least a tacit understanding that the declarant was "unavailable."

██ Finally, the State argues any error in admitting Johnson's statement.after his removal from the courtroom should be considered harmless. In support of this argument, the State suggests that cross-examination by the defense would have served no useful purpose, pointing out that Johnson

testified on direct examination that he had nothing to do with the crimes, that the prosecution was threatening him to make him say things that were not true in order to convict Mitchell, that the State had tried to brainwash him, and that he had been forced to appear at Mitchell's trial. We disagree that Johnson's conduct while he was on the stand warrants a finding of harmless error.

The supreme court has recently stated that "[a] violation of a defendant's Sixth Amendment right to confront witnesses is not *per se* reversible error" and that the appellate court "must determine whether the error was harmless beyond a reasonable doubt." *State v. Davis,* 371 S.C. 170, 181, 638 S.E.2d 57, 63 (2006). The court further explained that although the particular circumstances of a case should be considered in determining whether an error it harmless, "[e]rror is only harmless 'when it "could not have affected the result of the trial." ' " *Id.* at 181–82, 638 S.E.2d at 63 (quoting *State v. Mitchell,* 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985)) (internal citation omitted).

Even if Johnson's conduct on the stand was helpful to the defense, the State failed to explain in its brief how his behavior and evasive answers would inevitably lead to a determination by this Court that the admission of his statement did not contribute to the verdict beyond a reasonable doubt. In the statement, Johnson did more than corroborate the State's allegations; he also gave specifics about Mitchell's involvement that were not provided by any other witnesses, including assertions that Mitchell helped to obtain the weapons used to attack the victim and shared in the spoils of the crime. We are also concerned about the acknowledged lack of physical evidence linking Mitchell to the incident and the fact that Darby, the only eyewitness who provided any substantive testimony at the trial, implicated Mitchell only after authorities confronted her about the truth of her initial statement. Considering the record as a whole, then, we cannot say that admission of Johnson's statement could not reasonably have affected the result of Mitchell's trial. *See State v. Hamilton,* 344 S.C. 344, 362, 543 S.E.2d 586, 596 (Ct.App.2001) ("It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.") (citing *U.S. v. Hasting,* 461 U.S.

499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)), *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 107, 610 S.E.2d 494, 502 (2005).

## II. Exclusion of Evidence of Third–Party Guilt

Mitchell next argues the trial judge erred in refusing to allow him to submit into evidence telephone directories with listings similar to the name Darby initially gave to authorities. He argues this evidence was admissible because it was probative on the issues of third-party guilt, Darby's credibility, and the thoroughness of the police investigation. Based on the record before us, we find no error.

■ We decline to address the issue of whether the telephone directory listings were admissible as evidence of Darby's credibility or lack of it. Defense counsel, in arguing for admission of the directories, pointed out only that Darby's statements to police had been inconsistent, but never argued that admission of the directories would affect the jury's determination as to whether she was a believable witness. Absent an argument at trial that this evidence was necessary to impeach Darby's overall credibility, Mitchell cannot raise this argument on appeal. *See State v. Bryant,* 372 S.C. 305, 317, 642 S.E.2d 582, 589 (2007) (holding that, because an objection to the exclusion of certain testimony was not made to and ruled on by the trial judge, the issue was not preserved for appeal), *cert. denied,* —— U.S. ——, 128 S.Ct. 245, 169 L.Ed.2d 169 (2007).

■ We further hold the trial judge correctly excluded the telephone books as evidence of third-party guilt under *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941).

In *Gregory,* the supreme court held " '[e]vidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.' " *Id.* at 104, 16 S.E.2d at 534 (quoting 16 C.J. 560). *See also State v. Rice,* 375 S.C. 302, 317, 652 S.E.2d 409, 416 (Ct.App.2007) ("Our state supreme court has imposed strict limitations on the admissibility of testimony indicating third-party guilt.").

Although the United States Supreme Court recently addressed the issue of the admissibility of evidence of third-

party guilt in *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), that decision overruled the application of the limits on such evidence only to the extent that these limits rely on the prosecution's evidence against the defendant rather than on the strength of the evidence proffered by the defendant to establish third-party guilt. In the present case, there is nothing in the record suggesting the trial judge even considered the strength of the State's evidence against Mitchell in refusing to admit the telephone books into evidence. The fact that the directories may have contained listings of individuals with names that were either identical or similar to the name Darby initially gave to the police is simply not evidence that any of these individuals was involved in the incident.

Furthermore, we hold no prejudice resulted from the exclusion of the evidence insofar as it was proffered to demonstrate the police were not thorough in investigating the matter. *See* Rule 103(a), SCRE ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."). Although the trial judge prohibited the defense from introducing directory listings of similarly named individuals without evidence to connect such persons with the crime, he allowed the defense to ask what law enforcement did and did not do in their attempt to locate Terrance James, including whether the police checked the National Crime Information Center records, what police did to "flush out" Terrance James, and whether police looked for such a person in the local area. We have found nothing in Mitchell's brief explaining why this line of questioning would not be sufficient to cover the issue of the adequacy of the police investigation.

## CONCLUSION

We hold the trial judge committed reversible error in admitting Kelvin Johnson's statement to the police, Mitchell's objection to the statement and arguments on appeal were sufficient to preserve the matter for our review, and Mitchell is entitled to a new trial on this ground. Based on the record before us, we further hold the trial judge correctly excluded evidence submitted by the defense of third-party guilt.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

ANDERSON and SHORT, JJ., concur.