### 13865

LIVINGSTON v. MUTUAL BENEFIT LIFE INS. CO.

(174 S. E., 900)

88

*Mr. Andrew J. Bethea,* for appellant,

*Messrs. Thomas, Lumpkin & Cain* and *David Kay, Jr.,* for respondent,

June 22, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

From a directed verdict and judgment thereon in favor of the defendant insurance company, the plaintiff has appealed to this Court. The action, tried in the Court of Common Pleas of Richland County, was for $3,000.00, actual and punitive damages, growing out of the refusal of the insurance company to pay the amount claimed by the plaintiff to be due on an insurance policy, issued by it on the life of Robert L. Livingston. The facts necessary for a determination of the appeal are as follows:

The policy, referred to as "twenty-payment life," in the sum of $1,000.00, was issued to the insured on December 9, 1910, and thereunder he was entitled to certain dividends. The twenty-year period ended on December 9, 1930.

From time to time, within that period, the insured borrowed money from the company, including funds necessary, in some instances, to meet his premiums, the policy securing the payment of the loans, which bore interest at the rate of 6 per cent. per annum. Prior to December 9, 1931, when the interest on the loan would become due, the company gave the insured timely notice of the amount that would be due as interest, the amount of dividend available, and the cash balance required of him by way of interest in order to keep the policy in full force and effect, but no payment of the required amount was made. On January 23, 1932, the company sent the insured notice by registered mail, of the non-payment of the interest due on December 9, 1931, on his loan, and advised him that according to the terms of the loan agreement and the terms of the policy, the interest could not be added to the principal of the loan and the policy continued in force, for the reason that the total indebtedness at the end of the policy year would not be within the limit secured by the cash surrender value of the policy; and he was given due notice that unless the sum of $8.21 should be paid on or before February 23, 1932, the policy would thereupon become null and void, and would be marked off the company's books in consideration of the cancellation of the indebtedness. There was proof that this notice was received by the insured on January 26, 1932. There was no payment by the insured as demanded on February 23, 1932. The policy was declared canceled, and entry to that effect made on the books of the company. On that date, as it is admitted by the plaintiff, the total amount of the outstanding loan, with interest due thereon, was 39 cents more than the cash surrender value of the policy on that day.

The loan agreement signed by the insured provided for the payment of the full amount of the loan, and interest on the same at the rate of 6 per cent. per annum, to be "payable as the successive premiums, or instalments thereof, on the policy shall fall due, or, if there be no further premiums due,

at the end of each policy year." Therein, the insured acknowledged that the loan was for the purpose of continuing the policy in force. He further agreed "that if interest shall be not paid when due, it shall be added to the principal, provided the entire indebtedness then outstanding shall be within the limit secured by the cash surrender value of the policy; otherwise nonpayment of interest shall render the policy null and void after one month's notice shall have been mailed to the last known address of the insured and assignee, if any." There was no assignee other than the company.

The provisions of the policy as to "loans" were as follows:

"At any time while this Policy is in force the Company will loan on the sole security thereof up to the limit secured by the Cash Surrender Value, upon receipt of the Policy and a Certificate of Loan satisfactory to the Company. The loan will bear interest at the rate of six per centum per annum and may be paid off at any time while the Policy is in force. *If interest be not paid when due, it shall be added to the principal, provided the entire indebtedness then outstanding shall be within the limit secured by the Cash Surrender Value; otherwise non-payment of interest shall render the Policy null and void after one month's notice shall have been mailed to the last known address of the Insured and Assignee, if any."* (Italics ours.)

The trial Judge held that, under the terms of the quoted clause of the policy, the company, upon proper notice, had the legal right to cancel the policy, since the outstanding loan, and the interest thereon, at the date of cancellation, exceeded the amount of the cash surrender value, and the insured had failed to pay the interest due by him under his loan agreement and the terms of the policy.

The correctness of that ruling is challenged here by the appellant. Her counsel urges that the quoted terms of the policy should have been construed in connection with the "incontestable clause" contained therein, which was in the

usual language of such clauses in standard policies of the character of the one here involved, as follows: "This policy will be incontestable after one year from its date of issue except for nonpayment of premium."

We are of the opinion that the "incontestable clause" relates to the validity of the contract of insurance. It does not affect the construction of the terms of the contract. There was no question here as to the validity of the policy. The question related only to the construction of its terms, and the right of the insurer to cancel for failure of the insured to comply with the terms. The incontestable clause "controls all matters which would have the effect of defeating or destroying the contract of life insurance, such as those relating to the cause of death or the habits of the insured, although it will not control matters which affect the remedy merely." Elliott on Insurance, p. 410.

Regarding loans on policies, the general rule is that "the rights of the company are the same as those of any other lender of money, at least as to the rate of interest which it may collect and the mode in which it may enforce payment, it having the right to foreclose only in the mode provided by law or agreed upon by the parties." 32 C. J., 1166.

We have not been cited to any statute of our State similar, perhaps, to statutes of other States, providing by law for the foreclosure of a loan on a life insurance policy. Neither have we been referred to any case in our decisions which we think is in any way controlling of the question before us. The matter of the manner of foreclosure appears, therefore, to be one which may be properly the subject of contract between the parties, the insurer, and the insured. The contract here provided that method, namely, when the amount of the outstanding loan, and the interest due thereon, would exceed the amount of the cash surrender value of the policy, the insurer could cancel the policy upon thirty days' notice by mail to the insured of the intended cancellation,

if the insured failed to pay the interest due on the loan. The method, agreed to by the insured, was followed.

The appellant depends very much upon the case of *New York Life Insurance Company v. Curry & Bros.*, 115 Ky., 100, 72 S. W., 736, 737, 61 L. R. A., 269, 103 Am. St. Rep., 297. That case is not in point. The Kentucky Court held illegal the cancellation of the policy there involved for failure to pay interest on a policy loan, because the provision for forfeiture was "upon such terms as the payee of the note (the insurance company), may require, and at its option." The agreement in that policy did not allow the insured the actual cash surrender value of the policy in settling his indebtedness, but allowed only "the customary cash surrender value then allowed" by the insurer, which was only such value as the insurer itself might arbitrarily fix, denying thereby to the insured the benefit of the full amount to which he was entitled in a cancellation of his policy.

In a very able opinion of presiding Judge Jenkins of the Court of Appeals of Georgia, the decision in the *Curry case* was distinguished from many other cases touching generally the question here made. See *Hammond v. Volunteer State Life Insurance Company,* 47 Ga. App., 472, 170 S. E., 681, 685, decided on September 4, 1933. The validity of a stipulation in a paid-up life policy, providing for its cancellation, after notice to the insured, for failure to pay an outstanding loan, when the loan, and the interest thereon, exceeded the amount of the cash surrender value, was upheld by the Georgia Court, and numerous decisions, from jurisdictions throughout the United States, were cited in support of the conclusion reached. To sustain the conclusion of the Circuit Judge in this case, we cannot do better than to quote what was said by Judge Jenkins in the *Hammond case:*

"A stipulation in a paid-up policy of life insurance and a loan agreement thereon, providing for what amounts to a method of foreclosure, after the giving of the prescribed notice, by the cancellation of the policy and the application of the cash value thereof to the payment of the loan when-

ever the past-due principal with the interest thereon equals or exceeds the actual cash value of the policy (as distinguished from some amount arbitrarily fixed by the insurer without regard to the actual value), is valid, and does not contravene public policy or amount to confiscation or to an agreement for the exaction of a penalty for nonpayment of the indebtedness, since, under such a contractual procedure, the insured realizes the full amount of all his rights and interest in the policy at the time of such cancellation."

Incidental questions raised by the appellant in her exceptions have no real bearing upon the main issue for our determination, and it is not necessary that they be considered.

We regret, of course, that the insured, who died so soon after his policy was canceled, has caused loss to his estate and loved ones by his failure to comply with his contract. This Court has always been liberal in the construction of the terms of life insurance policies in favor of those carrying life insurance, but we can find no authority of law to authorize us to hold in this case that the insurance company exceeded its rights under the contract the insured made with it. Indeed, an examination of the entire record shows that the company, during the twenty years in which the policy here was carried, was exceedingly liberal with the insured. During those years, he actually paid out a net cash amount of only $141.48 for the protection he had, the company from time to time lending him not only sums to meet his premium payments, but cash in addition.

The judgment appealed from is affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.