17710

STATE, Respondent, v. Claude WILLIAMS, Appellant
(116 S. E. (2d) 858)

*D. M. McEachin, Esq.,* of Florence, *for Appellant,*

*Richard G. Dusenbury, Esq., Solicitor,* of Florence, *for Respondent,*

November 7, 1960.

OXNER, Justice.

Appellant, a Negro, was charged in one indictment with robbery, grand larceny and assault with a deadly weapon, and in another indictment with possessing, transporting and rescuing contraband liquor from the possession of a peace officer. With his consent, the two cases were tried together. During the course of the trial the Court directed a verdict of not guilty upon the count charging rescuing liquor from an officer and later the solicitor *nol prossed* the other liquor charges. The case was submitted to the jury only upon the indictment first mentioned. The jury returned a verdict or

guilty of grand larceny and assault of a high and aggravated nature. A motion for a new trial was denied and appellant was sentenced to imprisonment for a term of six years on each offense, the sentences to run concurrently.

We shall first determine whether the Court below erred in refusing a motion for a directed verdict on the assault charge upon the ground that the undisputed evidence showed that the alleged assault was made while resisting an attempted unlawful arrest.

During the late afternoon of October 18, 1958, a highway patrolman stopped a Chevrolet automobile driven by appellant's brother, Daniel Williams, in a rural section of Florence County. Just before the car stopped, the patrolman noticed appellant, Claude Williams, who was sitting on the front seat with his brother, bent over "like he was putting something under the seat." The patrol car was stopped about six or eight feet behind the Williams car. Daniel got out and the patrolman asked to see his license. After inspecting same, he asked Daniel who was with him. Daniel replied that it was his brother. The patrolman, who had no warrant, then went around the right side of the Williams car and asked appellant to "step back out of the car." When appellant did so, the patrolman says he saw a jar of unstamped liquor "sticking out from under the front seat." He removed this jar and another jar of liquor found under the front seat, placed them on the left side of his car, and asked Daniel and appellant to stand between the two cars. He then got in his car and radioed a deputy sheriff. While he did so, Daniel left the place where he was asked to stand and walked toward the Williams car. As the patrolman brought Daniel back, appellant proceeded up the road on the shoulder. The patrolman overtook him and placed his hand on his shoulder. Appellant said he was not going back and jerked loose. When he had done so several times, the patrolman says he drew his gun and asked Daniel to try to get his brother not to resist. After some conversation, appellant quieted down and was brought back between the two cars and the patrolman

replaced his gun in the holster. He testified that when he got out of his car after again using the radio, appellant suddenly caught him by the arm and after a struggle took his pistol from the holster. Appellant then went down the road approximately 30 or 40 yards and stopped. Daniel picked up the two jars of liquor, carried them to his brother, and returned to his automobile where after some difficulty, he was handcuffed by the patrolman. Appellant, after getting the liquor from Daniel, ran across the field and disappeared.

Appellant testified that he knew nothing about liquor being in the car until told by his brother after seeing the patrolman behind them. He denied that one of the fruit jars was sticking out from under the front seat, stating that it was not visible. He testified that the patrolman threatened to shoot him and he then grabbed the pistol from the patrolman's hand. Appellant said after he had gone down the road a distance of about 300 yards, he threw the pistol in a field of "pea forage." It was never found. The liquor was found the next morning. Daniel was later indicted and pleaded guilty to transporting it.

Under the terms of Section 46-854 of the 1952 Code, highway patrolmen are required to enforce the laws of this State relative to highway traffic and motor vehicles and are given the same authority and power possessed by a deputy sheriff to enforce the criminal laws of this State. Accordingly, it has been held that a highway patrolman is empowered to arrest without a warrant any person who commits a misdemeanor in his presence. *Yongue v. National Surety Corporation,* 190 S. C. 421, 3 S. E. (2d) 198. With certain exceptions not material here, a person is required to have a driver's license to operate a motor vehicle on the highways of this State, Section 46-142, Code Supplement. Such license must be kept in his immediate possession while driving and displayed upon demand of any police officer. Section 46-162, Code Supplement. The right of a patrolman to stop a car for the purpose of requiring the driver to exhibit his license has never been questioned. Of

course, such right must be exercised "in good faith and not as a pretext or subterfuge for an inspection of or a prying into the contents of an automobile or any other possession of a citizen." *Robertson v. State,* 184 Tenn. 277, 198 S. W. (2d) 633, 635.

There is no proof here that the patrolman did not act in good faith in stopping the automobile. He had a right to stop the car for the purpose of determining whether the driver had a license. Appellant's basic complaint is that after the car was stopped, he was unlawfully arrested, following which there was an unlawful search. But we think the evidence reasonably warrants a conclusion that appellant was not arrested until after the officer found the liquor. So far as appellant is concerned, the only act of the patrolman prior to that time was to request him to get out of the car. This cannot be said as a matter of law to amount to an arrest. "To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." *Jenkins v. United States,* 10 Cir., 161 F. (2d) 99, 101. It is not necessary "that there be an application of actual force, or manual touching of the body, or physical restraint which may be visible to the eye, or a formal declaration of arrest; it is sufficient if the person arrested understands that he is in the power of the one arresting and submits in consequence. However, in all cases in which there is no manual touching or seizure or any resistance, the intentions of the parties to the transaction are very important; there must have been intent on the part of one of them to arrest the other, and intent on the part of such other to submit, under the belief and impression that submission was necessary. There can be no arrest where the person sought to be arrested is not conscious of any restraint of his liberty." 4 Am. Jur., Arrest, Section 2. Also, see 6 C. J. S., Arrest, § 1; Restatement, Torts, Section 112.

The patrolman testified that he did not consider that Daniel was under arrest until after the liquor was found. The

following testimony of appellant also indicates that he did not consider himself under arrest when he stepped out of the car:

"Q. What did you walk away for in the first place when the officer told you to stand there? A. I didn't walk away. I walked up the side of the car.

"Q. Why? A. He hadn't told me about an arrest or nothing."

Neither, according to the patrolman's testimony, was there a search of the car. He says that after appellant got out the liquor was plainly visible. In *Boyd v. United States,* 4 Cir., 286 F. 930, 931, Judge Woods, who served on this Court for a number of years with distinction, said: "It is not a search in any legal or colloquial sense for an officer to look into automobile standing on the roadside."

The facts in *State v. Quinn,* 111 S. C. 174, 97 S. E. 62, 63, 3 A. L. R. 1500, are similar in some respects. There an automobile occupied by five men whom the officers suspected of violating the liquor laws stopped at a railroad crossing for a passing freight train. Two rural policemen came up, one on each side of the car. They observed a quart of liquor on the back seat and another on the front seat. Both quarts were seized. They also noticed that one of the men "had something in his hands, holding it down between his legs." One of the officers "pulled it out" and found it to be a quart of whiskey. All occupants of the car were then arrested. The Court held that there was no search, "for search implies invasion and quest, and that implies some sort of force, actual or constructive, much or little." The Court said no force was used in that case because "the condition was manifest to him who had eyes to see." It was further held under the foregoing facts that no arrest was made until after the liquor was discovered, at which time the officers had a right to make an arrest without a warrant.

It is further argued that there is no proof that appellant had anything to do with the liquor and, therefore, he com-

mitted no offense in the presence of the patrolman. His counsel states in an excellent brief: "The appellant stands in the position of having been exonerated by the *nol pros* of the State of the very misdemeanor for which the State must prove that it had a lawful right to arrest him. How can the State exonerate appellant of all crime and yet convict him for resisting arrest?" But we do not understand that the right to arrest appellant without a warrant was dependent upon his being subsequently convicted. In *State v. Koil,* 103 W. Va. 19, 136 S. E. 510, 511, the Court quotes with approval the following from Cornelius on Search and Seizure, Section 28: "A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." Also, see *Bradley v. State,* 202 Md. 393, 96 A. (2d) 491. We think the facts here were clearly sufficient to justify the patrolman in believing that appellant was violating the liquor law.

We conclude that there was no error in refusing appellant's motion for a directed verdict on the assault charge. There is ample testimony justifying a conclusion that at the time of the alleged assault appellant was under lawful arrest which he had no right to resist. However, there remains for consideration as to this offense the exception relating to a refusal of a requested instruction by appellant.

At the conclusion of the charge, the jury was excused and the Court inquired of counsel if there were any suggestions as to the charge or further requests. Appellant's counsel thereupon asked that the jury be instructed to the effect that an offense is not committed in the presence of an officer unless his senses afford him knowledge that the offense is being committed. The request embodied a sound legal principle. 4 Am. Jur., Arrest, Section 29. In *State v. Pluth,* 157 Minn. 145, 195 N. W. 789, 791, the Court said: "Although a person may actually be committing

a criminal offense, it is not committed in the presence of an officer within the meaning of the statute, if the officer does not know it. And where the officer could not observe nor become cognizant of the act constituting the offense by the use of his senses it could not be committed in his presence so as to authorize an arrest without a warrant." In view of the conflicting testimony in the instant case as to whether the liquor was visible to the highway patrolman after appellant got out of the car, we think the refusal of this request constituted prejudicial error.

The next question is as to whether the Court erred in refusing a motion for a directed verdict on the larceny charge upon the ground that there was no proof of an intent on the part of appellant to steal the pistol. "To make out the offense of larceny, there must be a felonious purpose. The taking must be done *animo furandi* —with a view of depriving the true owner of his property and converting it to the use of the offender." *State v. Watson,* 7 S. C. 63.

The question of whether the evidence reasonably warrants an inference of an intent to steal has given us considerable concern. Our investigation of the authorities discloses only a few cases involving a charge of robbery or larceny growing out of the forcible taking and carrying away of an officer's pistol while he was undertaking to make an arrest or otherwise acting in the discharge of his duties, and we are not sure that all of these cases can be reconciled. *Jones v. Commonwealth,* 1939, 172 Va. 615, 1 S. E. (2d) 300, cited in appellant's brief, tends to sustain the contention that there was insufficient evidence to establish the *animus furandi*. On the other hand, *Bailey v. State,* 1909, 92 Ark. 216, 122 S. W. 497, tends to support the conclusion that the question of intent should be submitted to the jury. These and other cases are reviewed in the recent caes of *Midgett v. State,* 1958, 216 Md. 26, 139 A. (2d) 209, where the Court held under facts similar in many particulars to those now presented that the question of intent should be left to the jury. Also, see *State v. Watson, supra,* 7 S. C. 63.

While the question is a close one, it is our conclusion that the question of felonious intent should be determined by the jury. The pistol was never found, although a search was made for it. The credibility of appellant's testimony that he threw it in the field shortly after taking it from the officer was for the jury. If after a forcible and unlawful taking, there was a subsequent felonious conversion, the offense of larceny would be complete. *State v. Davenport,* 38 S. C. 348, 17 S. E. 37; *State v. Craig,* 116 S. C. 440, 107 S. E. 926; 32 Am. Jur., Larceny, Section 40. Of course, a jury would be fully justified in concluding that there was no intent to steal the pistol but that the dominant and primary purpose of appellant was merely to disarm the patrolman, and that shortly after doing so, he discarded the pistol. Although this inference is strongly warranted by the testimony, we are not inclined to hold as a matter of law that proof of a felonious intent was wholly lacking.

We conclude that there was no error in refusing appellant's motion for a directed verdict on the larceny charge. However, the Court erred in refusing to grant his motion made at the conclusion of the evidence that the charge be reduced to petit larceny because there was no proof that the pistol was worth $20 or more. There was no evidence produced at the trial as to its value. So much was conceded in oral argument. Appellant's contention that the evidence does not support a conviction of grand larceny is fully sustained by *State v. Bethea,* 126 S. C. 497, 120 S. E. 239.

In view of the foreging conclusions, we find it unnecessary to pass upon appellant's exceptions relating to the inconsistency of the verdict, or upon the claim that the sentences are excessive.

Judgments reversed and sentences set aside, and the case is remanded for a new trial.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.