697 S.E.2d 593

**The STATE, Petitioner,**

v.

**Ricky BRANNON, Respondent.**

**No. 26855.**

Supreme Court of South Carolina.

Heard March 17, 2010.

Decided Aug. 9, 2010.

500

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Michelle Parsons Kelley, all of Columbia, and Harold W. Gowdy, III, of Spartanburg, for Petitioner.

Chief Appellate Defender Robert M. Dudek, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice HEARN.

We granted certiorari to consider whether the court of appeals erred in finding Ricky Brannon, who fled on foot from uniformed police officers after they ordered him to stop, was entitled to a directed verdict on the charge of resisting arrest. Although we disagree with the court of appeals' rationale, we affirm in result.

## FACTUAL/PROCEDURAL BACKGROUND

Maria Raney, a resident of Westwood Apartments in Gaffney, looked out the window of her apartment in the early morning hours of April 21, 2003 and noticed an individual inside her vehicle. She immediately called 911, and was instructed by the 911 operator to remain on the line until police arrived. While waiting, Raney saw the individual exit her vehicle and enter a nearby Ford Explorer. Minutes later, Officers Michael Scruggs and Randy Quinn of the Gaffney Police Department arrived on the scene.

Scruggs and Quinn approached the apartment complex in their patrol car, with the headlights and siren turned off. The

officers parked their car around the corner of the building and then proceeded on foot. Once they rounded the corner of the building, they saw an individual standing next to a Ford Explorer. As they approached the suspect, he looked up, and Quinn shouted "stop, police!" The suspect fled. After chasing him for 300 to 350 yards, the officers apprehended the suspect and placed him under arrest. The suspect was later identified as the respondent, Ricky Brannon.

The State charged Brannon with breaking into a motor vehicle and resisting arrest under section 16–9–320(A) of the South Carolina Code (2003), which makes it "unlawful for a person knowingly and willfully ... *to resist an arrest being made* ...." (*emphasis added*). At the conclusion of the evidence, Brannon moved for a directed verdict on the charge of resisting arrest, arguing the State failed to demonstrate that an arrest was being made when he fled from police. The circuit court denied Brannon's motion. Subsequently, Brannon was convicted of both charges. The court of appeals reversed, finding Brannon was not "seized" under the Fourth Amendment, and therefore, not under arrest when he ran from police. *State v. Brannon*, 379 S.C. 487, 508, 666 S.E.2d 272, 282 (Ct.App.2008). This Court granted the State's petition for writ of certiorari to review the court of appeals' decision.

## STANDARD OF REVIEW

"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Ladner*, 373 S.C. 103, 120, 644 S.E.2d 684, 693 (2007). When reviewing a denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *State v. Gaines*, 380 S.C. 23, 32, 667 S.E.2d 728, 733 (2008).

## LAW/ANALYSIS

### I. PROCEDURAL ARGUMENTS

Initially, the State asserts the court of appeals violated error preservation rules by using a seizure analysis to deter-

mine whether an arrest was being made. The State contends this argument was not preserved for appellate review because Brannon never used the terms "seizure" or "Fourth Amendment" in his motion for a directed verdict. We disagree.

Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review. *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003). Instead, a litigant is only required to fairly raise the issue to the trial court, thereby giving it an opportunity to rule on the issue. *Hubbard v. Rowe*, 192 S.C. 12, 19, 5 S.E.2d 187, 189 (1939). In this case, Brannon met this requirement by arguing an arrest was not being made when he ran from police. *See State v. Mitchell*, 378 S.C. 305, 662 S.E.2d 493 (Ct.App.2008), *cert. dismissed as improvidently granted*, Feb. 2010 (finding defense counsel preserved his objection under the Confrontation Clause where he objected to the introduction of a written statement at trial on the grounds he could not cross-examine the statement). Accordingly, we find this issue was properly preserved for appellate review.

The State also argues the court of appeals disregarded the law of the case doctrine in finding Brannon's flight from police did not constitute resisting arrest. *Brannon*, 379 S.C. at 517, 666 S.E.2d at 287. In charging the jury, the circuit court defined the term "resist" to include "peaceful nonviolent indirect obstruction of an arrest." Brannon failed to object to this charge. As a result, the State contends the circuit court's definition of the term "resist" is the law of the case, and under that definition, Brannon's act of running from police qualifies as resisting arrest under section 16–9–320(A). *See Mickle v. Blackmon*, 255 S.C. 136, 141–42, 177 S.E.2d 548, 549–50 (1970) (stating the failure to object to a jury instruction makes the charge the law of the case). We find it unnecessary to address this issue.

The State has the burden of proof as to all the essential elements of the crime. *State v. Attardo*, 263 S.C. 546, 550, 211 S.E.2d 868, 870 (1975). The accused is entitled to a directed verdict when the State fails to present evidence on a material element of the offense charged. *State v. Brown*, 360 S.C. 581, 586, 602 S.E.2d 392, 395 (2004).

There are multiple elements to the crime of resisting arrest as codified in section 16–9–320(A). Under section 16–9–320(A), the State must demonstrate that the accused knowingly and willfully resisted an arrest being made. As explained below, we find the State has failed to put forth any evidence demonstrating that an arrest was being made when Brannon fled from police. In light of this finding, we need not decide whether Brannon's flight from police amounted to resistance. *See Whiteside v. Cherokee Cty. Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating an appellate court need not address remaining issues when resolution of prior issue is dispositive).

## II. SEIZURE ANALYSIS

Next, the State contends the court of appeals erred in using a seizure analysis to determine whether an arrest was being made because the concepts of arrest and seizure are different. We agree.

■■ At the outset, we note the concepts of arrest and seizure are related in the sense that an arrest represents the highest form of seizure of the person under Fourth Amendment jurisprudence. *California v. Hodari D.,* 499 U.S. 621, 624 n. 3, 111 S.Ct. 1547, 1551 n. 3, 113 L.Ed.2d 690 (1991). However, the concepts are distinguishable because under *Terry v. Ohio* and its progeny, an individual can be seized under the Fourth Amendment without being arrested under state law. 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). As the United States Supreme Court stated in *Terry,* "[i]t is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology." *Id.* Furthermore, the concepts of arrest and seizure are also distinguishable because each concept requires a distinct analysis. In determining whether an arrest has occurred, the focus is on the intent of the police officer and the suspect. *State v. Williams,* 237 S.C. 252, 257, 116 S.E.2d 858, 860–61 (1960). By contrast an individual is seized under the Fourth Amendment when a reasonable person, in view of all the circumstances of a particular case, would not believe he was free to leave. *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988).

504

Based on the foregoing, we find the analysis employed by the court of appeals constitutes error because the concepts of arrest and seizure are unique creatures of criminal law, calling for distinct inquiries. Accordingly, we turn our attention to the common law of arrest to determine whether an arrest was being made at the time of Brannon's flight.

## III. WHETHER AN ARREST WAS BEING MADE

In *Williams,* this Court set forth specific elements to determine when an arrest has been consummated. 237 S.C. at 257, 116 S.E.2d at 860–61. Where the police officer does not manually touch the suspect, an arrest requires intent on the part of the officer to arrest the suspect, and intent on the part of the suspect to submit to the arrest, under the belief that submission was necessary. *Id.* Although *Williams* sets forth two elements to determine when an arrest has occurred, an arrest, itself, is an "ongoing process" in South Carolina. *State v. Dowd,* 306 S.C. 268, 270, 411 S.E.2d 428, 429 (1991). In this case, consistent with the plain language of section 16–9–320(A), we must determine whether an arrest was being made when Brannon fled from police. *See Gay v. Ariail,* 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009) (stating whether the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning). Thus, our inquiry is directed at determining whether the arresting process was underway at the time of Brannon's flight. Because the State has failed to put forth any evidence demonstrating that the officers either intended to arrest Brannon or that Brannon submitted to the arrest, we find an arrest was not being made when Brannon ran from police.

Initially, the State urges this Court to evaluate the officers' intent based on an objective inquiry of whether the officers had probable cause to arrest Brannon at the time of flight. *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004). We decline to do so because it is immaterial to our analysis to determine if the officers had probable cause to arrest Brannon. Under the plain language of section 16–9–320(A), we are only focused on determining whether an arrest was being made at the time of Brannon's flight. In *Williams,* this Court noted where the officer does not manual-

ly touch the suspect, "the intentions of the parties to the transaction are very important...." 237 S.C. at 257, 116 S.E.2d at 860. We find the phrase "the intentions of the parties to the transaction," refers to the subjective intentions of the law enforcement officer and the suspect. Thus, the intent of the officers to arrest Brannon must be evaluated under a subjective standard rather than the objective standard governing probable cause.

Both Officer Scruggs and Officer Quinn testified that when they arrived on the scene, they believed Brannon was breaking into automobiles. However, neither officer testified they intended to arrest him after seeing him. In fact, Quinn testified "our intention was to approach the subject and find out exactly what he was doing there at the time." Thus, according to Quinn, the police officers intended to question Brannon at the time he ran away. In support of its argument that an arrest was being made, the State points to the facts and circumstances as they existed when the police officers encountered Brannon. However, in our view, these facts reveal only that the police officers could have arrested Brannon, *i.e.* they had probable cause to believe he was committing a crime. These facts do not demonstrate that the police officers intended to actually do so.[1]

Likewise, there was also no evidence presented demonstrating Brannon submitted to the officers. To the contrary, as soon as Brannon saw the police officers, he ran. Therefore, we find an arrest was not being made at the time Brannon fled from police.

## CONCLUSION

Accordingly, we affirm the result reached by the court of appeals and find the circuit court erred in denying Brannon's motion for a directed verdict on the charge of resisting arrest.

---

1. The State contends the question of the officers' intent was a factual issue for the jury to determine. We disagree. This argument fails to take into account that an arrest is a material element of the crime of resisting arrest under section 16–9–320(A). *See Brown*, 360 S.C. at 586, 602 S.E.2d at 395 (stating the accused is entitled to a directed verdict when the State fails to present evidence on a material element of the offense charged).

PLEICONES and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which Acting Justice James E. Moore, concurs.

Chief Justice TOAL, dissenting in a separate opinion.

I respectfully dissent from the majority's opinion, and would reverse the court of appeals' decision finding the trial court erred in denying Brannon's motion for a directed verdict on the resisting arrest charge. I would affirm the trial court's denial of the directed verdict motion.

## Section III

The majority holds, "Because the State has failed to put forth any evidence demonstrating that the officers either intended to arrest Brannon or that Brannon submitted to arrest, we find an arrest was not being made when Brannon ran from police." [2] I disagree, and would hold that when the evidence and all reasonable inferences are viewed in the light most favorable to the State, the State put forth evidence that the officers intended to arrest Brannon. *See State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) (recognizing that when reviewing a denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the non-moving party).

I agree with the majority that, in addressing the issues in this matter, we are focused on whether an arrest was being made at the time of Brannon's flight. However, I disagree with their analysis and conclusion. The statute at issue states, "It is unlawful for a person knowingly and willfully ... to resist an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not." S.C.Code Ann. § 16–9–320(A) (2003).

An arrest is an ongoing process. *State v. Dowd,* 306 S.C. 268, 270, 411 S.E.2d 428, 429 (1991). This Court has held that in order to "'constitute an arrest, there must be an actual or

---

**2.** Brannon did not submit to the arrest because he was running away from the officers. Holding a suspect must submit to an arrest for an arrest to be initiated leads to an absurd result in a resisting arrest charge. The whole point of a resisting arrest charge is that a person is not submitting.

constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained.'" *State v. Williams,* 237 S.C. 252, 257, 116 S.E.2d 858, 860 (1960) (quoting *Jenkins v. United States,* 161 F.2d 99, 101 (10th Cir.1947)). *Williams* provided further guidance:

> It is not necessary "that there be an application of actual force, or manual touching of the body, or physical restraint which may be visible to the eye, or a formal declaration of arrest; it is sufficient if the person arrested understands that he is in the power of the one arresting and submits in consequence. However, in all cases in which there is no manual touching or seizure or any resistance, the intentions of the parties to the transaction are very important; there must have been intent on the part of one of them to arrest the other, and intent on the part of such other to submit, under the belief and impression that submission was necessary. There can be no arrest where the person sought to be arrested is not conscious of any restraint of his liberty."

*Id.* at 257, 116 S.E.2d at 860–61 (quoting 4 Am. Jur. *Arrest* § 2 (1936)); *see also* 5 Am. Jur. 2D *Arrest* § 4 (2007) ("Police detention constitutes an 'arrest' if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest."); 6A C.J.S. *Arrest* § 1 (2004) ("An arrest is the taking, seizing, or detaining the person of another by any act which indicates an intention to take him or her into custody and subject the person arrested to the actual control and will of the person making the arrest.").

Because Brannon was not physically touched or seized, pursuant to *Williams* the intentions of the parties are important. The question of intent from Brannon's perspective is obvious. Brannon was breaking into vehicles in the middle of the night. When he was surprised by two uniformed police officers, he ran and tried to avoid arrest. Any reasonable person in Brannon's position would not have the slightest doubt that the pursuing officers intended to place him in custody. Clearly, Brannon was "conscious of [the] restraint of his liberty." *Williams,* 237 S.C. at 257, 116 S.E.2d at 860.

Regarding the officers' intent, the majority holds that the intent of the officers must be evaluated under a subjective standard rather than the objective standard governing probable cause. I disagree and would apply an objective standard. The evidence reveals that a resident called 911 to report a car break-in which the caller was seeing in progress. The 911 operator kept the caller-witness on the line and notified the officers as to the location of the break-in and its progress. As the officers apprehended the suspect, they were receiving a live transmission of the caller-witness's ongoing observations as relayed by the 911 operator. Based on the information received from the 911 operator, coupled with the officers observations of Brannon next to the Ford Explorer with its door open and inside light on, a reasonably prudent police officer would have cause to believe that Brannon was committing the crime of breaking into a motor vehicle. The majority merely quoted one sentence of Officer Quinn's testimony when he stated that "[o]ur intention was to approach the subject and find out exactly what he was doing there at the time." The next sentence out of Officer Quinn's mouth was, "We believe [sic] he was breaking into a motor vehicle and we placed him under arrest for that charge." Taking the officers' testimony as a whole, and construing it in a light most favorable to the State, I would find there was sufficient evidence of intent to arrest Brannon.[3]

The presence of probable cause to arrest for breaking into a motor vehicle at the time of the initial encounter lies at the core of my view that the process of arrest was underway when the officers caught Brannon in the act. Probable cause is guided by Fourth Amendment jurisprudence and an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," *Whren v. U.S.*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The proper inquiry is an objective one, based on what a reasonable police officer would believe under the same circumstances. *Id.* at 810–13, 116 S.Ct. 1769. In this case, a reasonable police officer would have probable cause to arrest Brannon at the

---

**3.** Even using the majority's subjective standard, I believe that taking Officer Quinn's testimony as a whole and construing it in a light most favorable to the State would provide sufficient evidence of his subjective intent to arrest Brannon.

initial encounter. Brannon's location and conduct exactly matched the witness's description, as Brannon was standing next to the Ford Explorer with an open door in the deserted parking lot late at night.

In conclusion, I would hold that a person violates section 16–9–320(A) irrespective of the lack of physical contact when: (1) a law enforcement officer, from an objective standpoint, has probable cause to believe a person has committed a crime; (2) the law enforcement officer through words or actions makes known his intent to arrest or otherwise detain the person; (3) the person, from an objective standpoint, recognizes the presence of a law enforcement officer and understands the intent of the officer to arrest him; and (4) the person attempts to avoid the arrest by impeding, hindering, or obstructing the law enforcement officer, by means of fleeing from the officer or some other method of resisting or opposing the arrest. In this case, viewing the evidence and reasonable inferences in a light most favorable to the State, I would find a jury question was presented as to the charge of resisting arrest and would affirm the trial court's denial of a directed verdict motion.

## Sections I & II

I agree with the majority's holding in Section II of the majority opinion. I also agree with the portion of Section I of the majority opinion that holds Brannon did not need to use the terms "seizure" or "Fourth Amendment" in his motion for a directed verdict. However, because I would analyze Section III of the opinion differently than the majority, it is necessary for me to address the resistance issue in Section I of the majority opinion. In Section I, the majority held that it need not decide whether Brannon's flight from police amounted to resistance because it found there was no evidence an arrest was being made when Brannon fled from police. Because I would find there is evidence that an arrest was being made, I must also address whether Brannon's flight from police amounted to resistance.

The State argues the court of appeals disregarded the law of the case doctrine in finding Brannon's flight from police did not constitute resisting arrest. I agree. In charging the jury, the trial court defined the term "resist" to include "peaceful

nonviolent indirect obstruction of an arrest." Brannon failed to object to this charge. As a result, the trial court's definition of "resist" is the law of the case, and under that definition, Brannon's act of running from the police qualifies as resisting arrest under section 16–9–320(A). *See Mickle v. Blackmon,* 255 S.C. 136, 141–42, 177 S.E.2d 548, 549–50 (1970) (recognizing the failure to object to a jury instruction makes the charge the law of the case).

For the aforementioned reasons, I would affirm the trial court's denial of the directed verdict motion.

Acting Justice JAMES E. MOORE, concurs.