THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Russell Campbell, Jr., Appellant.
 
 
 

Appeal From Richland County
G. Thomas Cooper, Jr., Circuit Court
 Judge
Unpublished Opinion No.    2011-UP-059
Submitted December 1, 2010  Filed
 February 15, 2011
AFFIRMED

 
 
 
 William T. Toal, of Columbia, for Appellant.
 Attorney General Alan Wilson, Chief Deputy Attorney General John
 W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant
 Attorney General Deborah R.J. Shupe, Office of the Attorney General, of
 Columbia, for Respondent.
 
 
 

PER CURIAM:  Russell Campbell, Jr. appeals from the trial court's
 denial of his motion for
 judgment notwithstanding the verdict, a new trial, and sentence
 reconsideration.  Campbell argues the trial court erred in: (1) allowing the
 admission of expert opinion testimony; (2) not
 dismissing the indictment for
 obtaining money or other property; (3) not charging the incontestability
 insurance statute; and (4) not directing a verdict for Campbell.  We affirm.[1] 

FACTS
The
 Richland County Grand Jury indicted Campbell for obtaining property by false
 pretenses and making a false statement or misrepresentation.  The indictments
 alleged Campbell provided false information on an application for life
 insurance for Russell Campbell, Sr., Campbell's father (Father), with the
 intent to defraud Auto-Owners Life Insurance Company (Auto-Owners).  The State
 asserted Campbell signed the applications.  Father lived two years and eight
 months after the issuance of the policy, and upon his death, Campbell received
 $50,159.74.
Prior
 to trial, Campbell moved to quash the indictment alleging he obtained property
 by false pretenses on the ground that a life insurance policy is not money,
 valuable security, chattel, or real or personal property.  The State asserted
 Campbell not only obtained the policy and collected the proceeds after Father's
 death, but the policy itself was a valuable security because other companies
 purchase life insurance policies before the death of the insured.  The court
 denied Campbell's motion, finding the broad statutory language encompassed the
 right to receive benefits from a life insurance policy.  At the conclusion of
 the State's case, Campbell moved for a directed verdict on both charges,
 arguing (1) there was no evidence the Auto-Owners' policy had any cash value at
 the time the company issued the policy; (2) the State could not rely on the
 fact that Campbell received the policy proceeds because the policy was
 incontestable under state law; and (3) the policy's effective date preceded the
 application date, thus Auto-Owners did not rely on it to issue the policy.  The
 court denied the motion, finding the evidence went beyond mere conjecture or
 suspicion, and there was evidence that reasonably tended to prove Campbell's
 guilt.
After
 a three-day trial, the jury found Campbell guilty of both charges.  The court
 sentenced Campbell to three years imprisonment and ordered him to pay
 $50,159.74 in restitution for the charge of making a false statement or
 misrepresentation, and ten years imprisonment, suspended on the service of
 three years with five years' probation for the charge of obtaining property by
 false pretenses.  Campbell
 filed a motion for judgment notwithstanding the verdict, a new trial, and
 sentence reconsideration.  The court denied Campbell's motion.  This appeal
 followed.
Standard
 of Review
In criminal cases, the appellate court
 sits to review errors of law only and is bound by the trial court's factual
 findings unless they are clearly erroneous.  State v. Wilson, 345 S.C.
 1, 5-6, 545 S.E.2d 827, 829 (2001).  Thus, on review, the appellate court is limited
 to determining whether the trial judge abused his discretion.  Id.  An
 abuse of discretion occurs when the court's decision is unsupported by the
 evidence or controlled by an error of law.  State v. Garrett, 350 S.C.
 613, 619, 567 S.E.2d 523, 526 (Ct. App. 2002).
LAW/ANALYSIS
I.  Expert Opinion
Campbell
 argues the trial court erred in allowing expert opinion testimony by the investigating officer
 because it was hearsay.  We disagree.
Joe Jordan, an officer with the State Law Enforcement Division,
 testified he learned in his investigation that the insurance companies would
 not have issued the policies if they had known Father's true medical
 condition.  He also testified he sent copies of the application to the
 handwriting analysis unit and learned the signature on the application belonged
 to Campbell.  Campbell objected on the ground of hearsay.  However, the court
 held matters learned in the course of an investigation were admissible.
Rule 801(c), SCRE, defines hearsay as "a statement, other
 than one made by the declarant while testifying at the trial or hearing,
 offered in evidence to prove the truth of the matter asserted."  See State v. Vick, 384 S.C. 189, 199, 682 S.E.2d 275, 280 (Ct. App. 2009) (stating
 the "rule against hearsay prohibits the admission of evidence of an out of
 court statement by someone other than the person testifying[,] which is used to
 prove the truth of the matter asserted"); but see State v. Thompson,
 352 S.C. 552, 558, 575 S.E.2d 77, 81 (Ct. App. 2003) (holding an out of court
 statement is not hearsay if it is offered for the limited purpose of explaining
 why a government investigation was undertaken).   
Assuming without deciding that Jordan's testimony was hearsay, "the
 improper admission of hearsay testimony constitutes reversible error only when
 the admission causes prejudice."  Vick, 384 S.C. at 199, 682 S.E.2d
 at 280.  "Error is harmless when it could not reasonably have affected the
 result of the trial."  Id.  "[T]he admission of improper
 hearsay evidence is harmless where the evidence is merely cumulative to other
 evidence."  Id. at 199-200, 682 S.E.2d at 280.
Scott
 Brown, assistant manager at Auto-Owners, testified
 that Auto-Owners issues a policy if all the medical questions on the
 application are answered "no," and denies the application if any of
 the answers are "yes."  A forensic handwriting expert also testified he examined the
 signature on the Auto-Owners application and determined Campbell "probably"
 signed Father's name as the proposed insured.  Therefore, we find Jordan's
 testimony was merely cumulative to the other evidence presented at trial, and
 any error in allowing the admission of Jordan's testimony was harmless.
II.  Indictment
Campbell
 argues the court erred in not dismissing the indictment for obtaining money or other property because a
 life insurance policy is not property. 
 We disagree.
The indictment
 reads: "Campbell, Jr. did in Richland County on or about July 11, 2002,
 with intent to cheat and defraud the victim, Auto-Owners Life Insurance
 Company, obtain a life insurance policy on his father, Russell Campbell, Sr.,
 valued at more than five thousand dollars ($5,000.00), by means of false
 pretenses and false representations.  This is in direct violation of §
 16-13-240 of the South Carolina Code of Laws (1976), as amended."  Section
 16-13-240 of the South Carolina Code makes it a crime for any person to obtain
 from another person by false pretense or representation "any chattel,
 money, valuable security, or other property, real or personal, with intent to
 cheat and defraud a person of that property."  S.C. Code Ann. § 16-13-240
 (2003).  
At
 trial, Campbell moved to dismiss the indictment for obtaining property by false
 pretenses on the ground that a life insurance policy is a chose in action, not
 real or personal property.  The State argued Campbell received the policy and
 the money from the policy, and the policy itself was a valuable security
 because other companies purchase life insurance policies before the death of
 the insured.  The court denied Campbell's motion, finding the broad definition
 of property includes the right to receive insurance benefits.
In
 support of his argument that choses in action are not considered property,
 Campbell cites to Brown v. Brown, 279 S.C. 116, 302 S.E.2d 860 (1983), and Tiffault v. Tiffault, 303 S.C. 391, 401 S.E.2d 157 (1991).  In Tiffault,
 the court overruled Brown and held that vested military retirement
 benefits constitute property, which is subject to equitable distribution.  303
 S.C. at 392, 401 S.E.2d at 158.  Further, in Ball v. Ball, 312 S.C. 31,
 33-34, 430 S.E.2d 533, 534-35 (Ct. App. 1993), this court, in determining that nonvested
 pension rights are marital property, held South Carolina courts construe the
 term "property" very broadly, and it "is a general term that is
 used to designate a right of ownership and it includes every subject of
 whatever nature upon which the right of ownership can legally attach, including
 choses in action."  Thus, our courts have determined choses in action are
 property, and we find the court did not err in denying Campbell's motion to
 dismiss the indictment for obtaining property by false pretenses.
III.  Insurance Application
Campbell
 argues the court erred in failing to direct a verdict because the insurance company issued the policy
 prior to the date of the alleged fraudulent application, and thus, the
 application could not form the basis for the fraudulent intent to receive a
 policy.  We disagree.
The trial court is concerned with the existence or nonexistence of
 evidence, not its weight, when ruling on a motion for a directed verdict.  State
 v. Brannon, 388 S.C. 498, 501, 697 S.E.2d 593, 595 (2010).  The defendant
 is entitled to a directed verdict if the State fails to produce evidence of the
 offense charged.  Id.  "When reviewing a denial of a directed
 verdict, this court views the evidence and all reasonable inferences in the
 light most favorable to the nonmoving party."  Id.
Campbell
 asserts the application for insurance was dated July 11, 2002, yet the policy was issued on June 28, 2002.  Therefore, Campbell maintains the application, dated
 after the insurance company issued the policy, could not have affected the
 company's decision to issue the policy.
Campbell
 contacted an insurance agent on June 28, 2002, to purchase a life insurance
 policy on Father.  Campbell sought to purchase a term life insurance policy,
 but the agent mistakenly sent him an application for whole life insurance. 
 Brown testified the company received the application for whole life insurance
 from Campbell via facsimile on June 28, 2002, and the original document with
 the premium payment on July 8, 2002.  Campbell submitted an amended application
 on July 11, 2002, for a five-year term policy for $50,000.  Auto-Owners
 processed the five-year term policy naming Campbell as the beneficiary on July
 15, 2002, with an effective date of June 28, 2002.  The company backdated the
 policy because Campbell had submitted the premium payment with the June 28,
 2002 application.  Campbell testified he supplied the information for the June
 28, 2002 application, and the July 11, 2002 application contained the same
 information. 
In
 both applications, Campbell indicated Father had no medical conditions, when
 Father had significant health issues, including cardiovascular disease and
 breathing difficulties, had suffered a stroke, and required assistance to do
 routine activities, such as dressing himself, eating, bathing, using the
 bathroom, and moving around.[2] 
 Father was also a smoker, and the applications indicated he was not.  A nursing
 home admitted Father on July 5, 2002, due to his deteriorating medical
 condition, and Campbell signed the admission documents because Father was
 physically and mentally unable to participate in the admission process.[3] 
 Brown testified that Auto-Owners issues a policy if all the medical questions
 on the application are answered "no," and denies the application if
 any of the answers are "yes."   
Therefore,
 sufficient evidence exists from which the jury could find the insurance company
 based the June 28, 2002 insurance policy on the July 11, 2002 application, and we
 find the court did not err in denying Campbell's motion for directed verdict.  
IV.  Incontestable Insurance Statute
Campbell
 argues the court erred in not
 charging the jury on the incontestability insurance statute because it directly
 affects whether his receipt of money was undeserved.[4]  We disagree.
The
 trial court's duty is to give a requested instruction that correctly states the
 law applicable to the issues and is supported by the evidence.  State v.
 Dickey, 380 S.C. 384, 395, 669 S.E.2d 917, 923 (Ct. App. 2008).  The court's
 refusal to give a requested jury charge must be both erroneous and prejudicial
 to the defendant to warrant reversal.  Id.  The failure to give one side's
 requested instructions is not prejudicial if the instructions given to the jury
 afford the proper test for determining the issues.  Id.
In Blackwell
 v. United Insurance Co. of America, our supreme court stated an
 incontestable clause "means only this, that within the limits of the
 coverage the policy shall stand, unaffected by any defense that it was invalid
 from its inception, or thereafter became invalid by reason of a condition
 broken."  231 S.C. 535, 538-39, 99 S.E.2d 414, 416 (1957) (quoting Metropolitan
 Life Ins. Co. v. Conway, 169 N.E. 642, 642 (N.Y. 1930)).  In Livingston
 v. Mutual Beneficial Life Insurance Co., our supreme court explained the
 effect of the incontestable clause:

 The
 "incontestable clause" relates to the validity of the contract of
 insurance.  It does not affect the construction of the terms of the contract. .
 . . The incontestable clause "controls all matters which would have the
 effect of defeating or destroying the contract of life insurance, such as those
 relating to the cause of death or the habits of the insured, although it will
 not control matters which affect the remedy merely."  

173 S.C. 87, 88, 174 S.E.
 900, 901 (1934) (citation omitted).
At
 trial, Campbell requested a jury charge on the incontestable statute, but the
 court denied the request, finding the incontestability was between the insured
 and the carrier and the court should not charge a civil statute in a criminal
 matter.  Campbell asserts that under the incontestable insurance statute, even
 if some of his answers on the application were false, Auto-Owners must pay
 Campbell the policy proceeds because Father lived two years after he signed the
 application.   
The
 State charged Campbell with making a false statement or misrepresentation in
 violation of section 38-55-540 of the South Carolina Code, which is a criminal
 statute found in the Omnibus Insurance Fraud and Reporting Immunity Act.  S.C.
 Code Ann. § 38-55-510 to 590 (2002 & Supp. 2010).  Section 38-55-520
 provides the purpose of the Act "is to confront aggressively the problem
 of insurance fraud in South Carolina[,] . . . to prescribe penalties for
 insurance fraud[, and] . . . to establish a division within the Office of the
 Attorney General to prosecute insurance fraud . . . ."  S.C. Code Ann. §
 38-55-520 (2002).  The Act does not provide any time limitations on criminal
 actions for insurance fraud.  
In
 contrast, the incontestability clause is between the insured and the carrier,
 and is a civil statute.  The issue in this case is not whether the insurance
 company paid the policy, but is whether Campbell provided false information to
 obtain the policy in the first place.  If the court applied the
 incontestability clause to a case for insurance fraud, it would inject civil
 law into a criminal proceeding.  It also would allow an insured to make a false
 statement on an insurance application with no consequence if the insured lives
 more than two years after an insurance company issues a policy, which is
 contradictory to the intent of the Omnibus Insurance Fraud and Reporting
 Immunity Act.  Therefore, we find the court did not err in denying Campbell's
 request to charge the jury on the incontestable statute.
V.  Value
 of Life Insurance Policy
Campbell
 argues the court erred in not
 directing a verdict for Campbell because the policy had no cash value at the
 time Auto-Owners issued it, and the policy's value is measured at the time of
 receipt.  We disagree.
The trial court is concerned with the existence or nonexistence of
 evidence, not its weight, when ruling on a motion for a directed verdict.  Brannon,
 388 S.C. at 501, 697 S.E.2d at 595.  The defendant is entitled to a directed
 verdict if the State fails to produce evidence of the offense charged.  Id. 
 "When reviewing a denial of a directed verdict, this court views the
 evidence and all reasonable inferences in the light most favorable to the
 nonmoving party."  Id.
Campbell
 argues the indictments allege the wrongful act was the filling out of the
 application and the receipt of the policy; however, he asserts there is no
 evidence the policy had any value at that time.  Campbell maintains the only
 evidence of value is that two years and eight months after the time alleged in
 the indictment, when Father passed away, the insurance company paid the policy
 proceeds.  He asserts that neither indictment alleges his receipt of the policy
 money was wrongful.  Therefore, Campbell argues the court should have granted
 his motion for directed verdict.
Denise
 Miller, the owner of a viatical and life settlement provider, testified her
 company purchased life insurance policies for a percentage of the death
 benefit, and in 2005, a broker brought her six policies on Father to consider
 purchasing.  Miller's company obtained Father's medical records and got an
 independent opinion that Father's life expectancy was only three months.  Therefore,
 Miller advised the broker that it would not be in the family's best interest to
 sell the policies, but the broker said Campbell wanted to sell them anyway. 
 Campbell completed the purchase contract and returned it to Miller with the
 original policies and applications.  Miller's company then initiated an
 investigation and discovered significant inconsistencies in Father's medical
 condition and the applications.  When Miller contacted Campbell about the
 inconsistencies, he stated they had completed the applications "to the
 best of their abilities."  Campbell also told her it was beyond the
 two-year suicide and contestable periods, so the insurance companies would
 still pay the policy proceeds.  Miller told Campbell she was unwilling to
 complete the purchase, and she notified the appropriate authorities of the
 potential fraud.
Therefore,
 sufficient evidence exists from which a jury could find the Auto-Owners policy
 had value from the date the company issued the policy, and we find the court
 did not err in denying Campbell's motion for directed verdict.
CONCLUSION
Accordingly, the trial
 court's order is
AFFIRMED.
FEW, C.J., SHORT and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  The insurance agent testified Campbell told her
 Father was still working in the landscaping business, and he lived in
 Columbia.  Campbell never mentioned Father was ill or living in a nursing home
 in McCormick County.  She also testified she had no knowledge anyone other than
 Father signed the applications.
[3]  The admission nurse testified that Campbell was very
 knowledgeable about Father's condition and his needs.
[4]  In his brief, Campbell cites to section 38-63-200 of
 the South Carolina Code; however, this section does not exist.  Thus, we assume
 he meant to cite section 38-63-220(d), which mandates that insurance policies
 must contain "a provision that the policy . . . [is] incontestable as to
 the truth of the application for insurance and to the representations of the
 insured individual after they have been in force during the lifetime of the
 insured for a period of two years from their date of issue."  S.C. Code
 Ann. § 38-63-220(d) (2002).